Walter TRISPEL, as Special Administrator of the Estate of Elsie E. Trispel, Deceased, Plaintiff-Appellant, v. HAEFER, and others, Defendants-Respondents.

Supreme Court

*No. 76–678. Submitted on briefs May 2, 1979.—*
*Decided May 30, 1979.*
(Also reported in 279 N.W.2d 242.)

726

For the appellant the cause was submitted on the brief of *Eisenberg & Kletzke* of Milwaukee.

A joint brief was filed by *Ronald L. Piette* and *Craig Nelson* of Milwaukee, for Barbara Haefer and Allstate Insurance Company; and by *Prosser, Wiedabach & Quale, S.C.*, attorneys, and *Douglas H. Starck*, of counsel, all of Milwaukee, for Kohl's Food Stores, Inc., and Continental Casualty Company.

COFFEY, J. The plaintiff-appellant is the special administrator of the estate of Elsie E. Trispel who died in

December of 1974. Barbara Haefer, Kohl's Food Stores, Inc. and their respective insurers, Allstate and Continental Casualty Insurance companies are the defendants-respondents. The estate's wrongful death action alleges that on January 31, 1974 Barbara Haefer negligently struck Elsie Trispel with a shopping cart causing the 83 year-old woman to fall to the floor and hit her head. It is also alleged that Kohl's was in violation of the safe-place statute by maintaining unsafe and narrow aisleways and piling merchandise at the ends of the aisles, thus preventing Mrs. Trispel from seeing the shopping cart traffic rounding the corner.

The plaintiff-appellant's original complaint was served on April 2, 1976 and amended on June 21, 1976. The following day the court ordered the amended complaint against Kohl's Food Stores dismissed but granted the plaintiff-appellant leave to amend so as to make the complaint more definite and certain and stating a cause of action. A second amended complaint was then served on June 25, 1976. The court held a pre-trial conference on October 7, 1976, attended by the parties' respective counsel. In a letter memorandum order dated October 7, 1976 the trial court summarized the matters discussed and agreed upon at the pre-trial conference. The letter reflects that the court ordered the plaintiff-appellant to:

(1) post security bond without delay.

(2) submit authorization for the release of medical, doctor and hospital records by October 15, 1976.

(3) produce a medical report establishing a causal connection between the accident referred to in the complaint and the decedent's death no later than December 15, 1976.

(4) submit an itemized claim for pecuniary loss. The pre-trial order also required that all discovery be completed by March 15, 1977 in order for the parties to prepare for the scheduled trial of May 31, 1977. Further,

the order explicitly stated that "A motion to dismiss is contemplated and will be undoubtedly filed" and "There will be no deviation from this order except on proper motion."

On February 28, 1977 the defendants-respondents served a motion for dismissal for failure to comply with the pre-trial order concerning the plaintiff's failure to file a medical report and to post the security. The plaintiff-appellant then requested leave of the court to amend his complaint to remove all claims of damages for wrongful death and rely solely on a claim for pain and suffering. At a hearing on March 21, 1977 the plaintiff-appellant's attorney stated that the deceased's treating physician had been seriously ill and thus he was unable to provide the report as ordered. In an order dated March 29, 1977 the trial court denied the motion to amend the complaint for a third time and granted the defendants-respondents' motion to dismiss the action. The trial judge stated his reasoning for the order of dismissal was the plaintiff-appellant's "inexcusable failure to comply with the pre-trial order and belated attempt to shift the theory and nature of this action by the recently filed motion to amend the complaint."

*Issues*

1. Did the trial court abuse its discretion by not granting leave for the plaintiff-appellant to amend his complaint for the third time some 3½ months after the final date for the production of evidence pursuant to the court's pre-trial order of October 7, 1976?

2. Did the trial court abuse its discretion in dismissing the plaintiff's action with prejudice in accordance with sec. 805.03, Stats?

The plaintiff-appellant has alleged that the trial court abused its discretion in refusing to grant leave "to conform his pleadings to his proof." The plaintiff-appellant,

in fact, has misstated the issue as the action has not been tried and thus no proof has been presented. However, the issue in the present case is not simply whether it was an abuse of discretion to deny the plaintiff-appellant leave to amend his complaint; but whether a party should be permitted to amend his pleading for a third time after an absolute failure to comply with a pre-trial order, despite a specific warning of a potential dismissal motion prompted by the plaintiff-appellant's questionable allegations in the original and amended complaints. It is noted from the record that the pre-trial order reflected a concern with the discovery and proof aspects of the plaintiff-appellant's wrongful death claim and thus required the plaintiff-appellant to submit a medical report before December 15, 1976 establishing the causal connection between the accident and Mrs. Trispel's death.

The amendment of pleadings is provided in sec. 802.09, Stats., and reads as follows:

"Sec. 802.09 (1) (1975). AMENDMENTS. A party may amend his pleading once as a matter of course at any time prior to the entry of the scheduling order provided in s. 802.10 (1). Otherwise a party may amend his pleading only by leave of court or by written consent of the adverse party; *and leave shall be given freely when justice so requires. . . .* At any stage of the action, the court may *allow amendment of any process or proceeding if justice requires it.*" (Emphasis supplied.) [1]

---

[1] Amended by Supreme Court order dated March 14, 1978, effective July 1, 1978 and reads:

"(1) AMENDMENTS. A party may amend his pleading once as a matter of course at any time within 6 months after the summons and complaint are filed or within the time set in a scheduling order under s. 802.10. Otherwise a party may amend the pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given at any stage of the action when justice so requires. A party shall plead in response to an amended pleading within 20 days after service of the amended pleading unless (a) the court otherwise orders or (b) no responsive pleading is required or permitted under s. 802.01(1)."

Traditionally, Wisconsin case law and the statutes have granted a trial judge broad discretion in determining whether to permit an amendment of the pleadings. The prior statute dealing with the amendment of pleadings, sec. 269.44, Stats., allowed pleadings to be amended "upon such terms as may be just."

This court recognizes the statutory intent in sec. 802.09 (1975) allowing a one-time amendment of the pleadings before the scheduling order and further providing for an amendment only by leave of the court where justice requires, or written consent of the adverse party. In *Celmer v. Quarberg,* 56 Wis.2d 581, 592, 203 N.W.2d 45 (1973) the court noted the deference accorded to a trial court's determination granting or denying leave to amend, stating "amendments to pleadings are within the discretion of the trial court and a case will not be reversed on account of that court's ruling thereon unless there has been a manifest abuse of discretion." Thus, in order for the instant case to merit reversal the appellant must clearly show that the trial court's refusal to permit an amendment of the pleadings was a manifest abuse of discretion.

However, in this case, the liberal attitude toward granting leave for the amendment of pleadings must be balanced against the court's concern for the orderly administration of justice. Thus, we examine the question of whether or not the court abused its discretion in dismissing the appellant's complaint for failure to comply with the pre-trial orders including the required production of a medical report establishing the causal connection between the alleged fall and Mrs. Trispel's death.

The trial court granted respondents' motion for dismissal pursuant to sec. 805.03, Stats., which reads:

"For failure of any claimant to prosecute or for failure of any party to comply with the statute governing procedure in civil actions *or to obey any order of the court, the court in which the action is pending may make such orders in regard to the failure as are just, including but not limited to orders authorized under sec. 804.12(2)(a). Any dismissal under this section operates as an adjudication on the merits* unless the court in its order for dismissal otherwise specifies for good cause shown recited in the order." (Emphasis supplied.)

Authoritative commentaries in review of sec. 805.03 sanctions point out that a dismissal of an action for failure to comply with a pre-trial order should rarely be granted. The Judicial Council Committee's Notes accompanying the statute state that ". . . Because of the harshness of the sanction, a dismissal under this section should be considered appropriate only in cases of egregious conduct by a claimant." W.S.A. sec. 805.03 at p. 414 (1974). In Graczyk, "Wisconsin Rules of Civil Procedure, Chapters 805–07 . . ." 59 Marq. L. Rev. 671, 675 (1976) it is further stated:

"Although the section allows dismissal for non-compliance with even the most trivial procedural . . . orders, a dismissal with prejudice should be granted only in extreme circumstances."

The appellant argues that the dismissal was an abuse of discretion for two reasons: first, there was good cause for his failure to comply with the pre-trial order for production of the medical report and; second, that his due process right to notice was violated as he was not informed that his failure to comply with the pre-trial order could result in a dismissal of the action.

In making the claim that there was good cause for his noncompliance, the appellant argues that it was impossible for him to produce the medical report because of the serious illness of Mrs. Trispel's treating physician.

Thus, he challenges the trial court's assertion that there was no reasonable ground for his failure to comply with the court order.

■ The principle is firmly established that in order to demonstrate that a dismissal order based upon the failure to prosecute was an abuse of discretion, the aggrieved party must show "a clear and justifiable excuse" for the delay. *Taylor v. State Highway Comm.*, 45 Wis.2d 490, 494–95, 173 N.W.2d 707 (1970). This strict standard (clear and justifiable excuse for the delay) is applied as it is the "duty" of trial courts, "independent of statute," to discourage protraction of litigation and to "refuse their aid to those who negligently or abusively fail to prosecute the actions which they commence." *Smith v. Carter,* 141 Wis. 181, 184, 122 N.W. 1035 (1910). In *Latham v. Casey & King Corp.,* 23 Wis.2d 311, 314, 127 N.W.2d 225 (1964), the court stated:

"It is considered well established that a court has the inherent power to resort to a dismissal of an action in the interest of the orderly administration of justice. The general control of the judicial business before it is essential to the court if it is to function." *Id.* at 314.

A recent decision closely parallels the present case wherein the court considered a plaintiff's failure to produce an allegedly defective tie-rod for defense analysis. In *Furrenes v. Ford Motor Co.,* 79 Wis.2d 260, 255 N.W. 2d 511 (1977) an order was entered requiring the production of the evidence and two weeks after the failure of the plaintiff to produce the evidence within the time period specified by the court, the defendant brought an order to show cause why the action should not be dismissed. The trial court, some three months later, dismissed the action as the evidence still had not been produced. This court noted in its decision that after the time allotted by the trial court for the production of the

evidence had expired, and more than 18 months after the defendant had privately requested its production, the plaintiff for the first time revealed that the evidence was missing and explained it had never been in his possession.

The court in *Furrenes* further stated that the information, although relevant as to the appropriateness of the penalty imposed for non-compliance, did not "alter or explain the reasons for non-compliance prior to the passage of the court-set deadline for production." *Id* at 264. In other words, the other "possibly extenuating circumstances" did not erase the fact of non-compliance or the failure to seek an extension or modification of the order before the deadline had passed. The court concluded that the plaintiff's actions in failing to comply with the court order for the production of the evidence or to offer a timely explanation for his failure amounted to bad faith. The court stated the following, indicating that a dismissal of the complaint on its merits is a warranted sanction for a party's bad faith failure to comply with a court order:

"If matters of expediting court proceedings and assuring proper and prompt administration of justice are to be more than mere matters on the agenda at judicial or bar association workshops, the lead of the nation's high court is to be followed in upholding dismissals on the merits where, as the trial court found in the *National Hockey League Case*, and we see in the case before us, there has been a 'callous disregard of responsibilities' owed by plaintiff and plaintiff's counsel to the court and to the adversary parties." *Id.* at 267.

In the instant case there is no information in the record nor affidavit on file showing a clear and justifiable excuse for plaintiff's counsel's failure to comply with the pre-trial order of October 7, 1976 directing the filing of a medical report concerning the causal connection between the alleged accident and Mrs. Trispel's death. At the hearing on the motion to dismiss, March 21, 1977, the

trial judge pointed out that the last date for the production of evidence (December 15, 1976) had expired over three months before the court was even advised that the medical report could not be produced. The appellant had ample opportunity for some 3½ months to request the court for an extension of the time to produce the requested medical report or in the alternative, move to amend the pleadings and thus abide by the pre-trial order. Through carelessness or neglect, the appellant failed to seek either alternative. Instead, his attorney waited until the zero hour and at the hearing on the motion to dismiss apprised the court for the first time regarding the problem with the doctor and the ordered medical report. With this factual background in mind, the trial judge stated that he was not satisfied that a reasonable explanation for the failure to comply with the order had been provided.

We hold the trial court's order dismissing the appellant's claim was not an abuse of discretion in light of the plaintiff's failure to comply with the pre-trial order or at the very least to inform the court on or before December 15th of his inability to produce the medical report. In this case, the plaintiff-appellant could easily have protected his rights by informing the court and opposing party of his inability to provide the required information before the deadline set by the trial court. His failure to provide a timely, clear or justifiable explanation for his non-compliance was inexcusable. Pursuant to these facts, it was not an abuse of discretion to dismiss the appellant's action as *Alexander v. Farmer's Mut. Auto Ins.*, 25 Wis.2d 623, 629, 131 N.W.2d 373 (1964) notes "Some means must be available to enable the trial judge to rein in uncooperative parties."

The appellant contends that he was not given adequate warning that his failure to provide the medical report

would preclude the litigation of his claims. In support
of his argument he cites *Latham v. Casey & King Corp.,*
*supra,* for the proposition that dismissal for "the sin of
omission is too great a burden." *Id.* at 316.

In *Latham* the court reviewed the dismissal of an ac-
tion pursuant to the Milwaukee County Civil Court Rules
of Procedure applicable at that time. This court stressed
that the Milwaukee County Civil Court Rules, unlike the
Federal Rules of Civil Procedure, did not disclose the ex-
istence of any court rule providing for sanctions or pen-
alties for the non-appearance of counsel at a pre-trial
hearing. As a result, the court concluded the following:

> "The due process clause of the Fourteenth Amendment
> requires at least a fair and adequate warning by court
> rule or notice of the imposition of sanctions or penalties
> to be invoked for the failure to comply with a court or-
> der. Lacking such a forewarning, a hearing should be
> had on the imposition of a penalty." *Latham v. Casey &*
> *King Corp., supra* at 316.

Since the Wisconsin Rules of Civil Procedure (effec-
tive January 1, 1976) have been amended and patterned
after the Federal Rules, the appellant misplaces his re-
liance on the *Latham* decision. Sec. 805.03, Stats., is suf-
ficient notice to attorneys practicing in this state of the
action which a court may take after a party's failure to
comply with pre-trial orders. The dismissal of an action
under appropriate circumstances is not an extreme mea-
sure if the trial courts are to be encouraged to facilitate
and expedite the trial of their cases.

We cannot find that the appellant was denied due
process notice when the pre-trial order of October 7, 1976
alerted counsel of the likelihood of dismissal for failing
to comply with the court's orders. Specifically, the trial
court's order stated "There will be no deviation from this

order except upon proper motion." Noting further, "A motion to dismiss is contemplated and will undoubtedly be filed." The trial court's specific warnings as to the result of the plaintiff's failure to comply with the pre-trial order further distinguishes the *Latham* case. In that case, the plaintiff's counsel had failed to appear at a pre-trial conference and the court *sua sponte* ordered dismissal of the complaint and granted judgment on the defendant's counterclaim.

This court in *Hauer v. Christon*, 43 Wis.2d 147, 154, 168 N.W.2d 81 (1969) discussed the inherent power of a court to dismiss pleadings for failure to obey a court order and held the following:

"We hold the trial court has an inherent power to dismiss a complaint and also to strike an answer and grant a default judgment, but whether such power is inherent or given by statute, the exercise of the power is limited by the requirement of due process of the fourteenth amendment of the United States Constitution. . . ." *Id.* at 154.

*Hauer* cites *Hammond Packing Co. v. Arkansas*, 212 U.S. 322 (1909) for the proposition that a party's pleadings may be stricken as a sanction for failing to comply with a pre-trial order because a presumption arises from the failure to produce the ordered evidence. This court explained the holding in the *Hammond* case that due process was not denied when the defendant's answer was stricken for his failure to comply with a court order because "Due process was preserved . . . by the presumption that the refusal to produce evidence material to the administration of due process was an admission of want of merit in the asserted defense." *Supra* at 152.

In the case at bar, the trial court had the statutory authority to dismiss the complaint and grant judgment to

the respondents in view of the fact that the appellant had failed to comply with a pre-trial order within the time set by the court. Also, he failed to inform the court or opposing parties of the reasons for his failure to comply with the order and did not do so until the hearing on the motion to dismiss some three months after the date set for production of the reports. A careful review of the record in its entirety and the controlling statutory and case law recited herein, adequately support the conclusion that the trial court did not abuse its discretion in refusing to grant leave to the appellant to amend his pleadings for a third time.

The interests of justice do not favor permitting a party to amend his pleadings in order to allege a new theory of recovery, after the original theory has been foreclosed due to his failure to comply with a pre-trial order. Rather, the interests of justice favor the compliance with court orders designed to prevent the unnecessary protraction of litigation.

*By the Court.*—Order affirmed.