ENGLEWOOD COMMUNITY APARTMENTS LIMITED PARTNER-
SHIP: Kenneth R. Boyce, C. Robert Jackson, Earl W.
Mylrea, Harold Gatzke, Donald Gatzke, Kenneth
Gatzke, Gloria Sarto and Joseph S. Brendel, Plain-
tiffs-Appellants,

v.

ALEXANDER GRANT & COMPANY, Defendant-Respondent.†

Court of Appeals

*No. 83–1121. Submitted on briefs March 14, 1984.—*
*Decided April 16, 1984.*
(Also reported in 349 N.W.2d 716.)

† Petition to review denied.

For the plaintiffs-appellants the cause was submitted on the briefs of *Johnson and Bucklo,* with *Donald L. Johnson,* of Chicago, Illinois, and *Gibbs, Roper, Loots & Williams,* and *John R. Hoaglund, Jr.,* of counsel, of Milwaukee.

For the defendant-respondent the cause was submitted on the briefs of *Michael, Best & Friedrich,* with *John K. MacIver, K. Thor Lundgren,* and *Toni L. Bonney* of counsel, of Milwaukee.

Before Decker, Moser and Nettesheim, JJ.

DECKER, J.   Englewood Community Apartments, a limited partnership, and its limited partners named above (Englewood) appeal from an order dismissing their complaint against Alexander Grant & Co. (Grant), with prejudice for failure to comply with certain discovery requirements.   Englewood contends that the trial court abused its discretion in dismissing the complaint because Englewood acted in good faith and because less severe sanctions were available.   We are persuaded that the trial court sufficiently explained its exercise of discretion and that the expressed rationale is supported by the record.   Accordingly, we affirm.

Englewood brought suit against Grant in April, 1980, alleging that Grant, an accounting firm, had given the Englewood limited partners erroneous tax advice in 1973–74.   On July 31, 1980, Grant served interrogatories on each named limited partner;[1] no answers were re-

---

[1] Fourteen limited partners were named in the original summons; only eight are named in the appeal.

ceived. No limited partner filed any objection or moved for an extension of time. On October 27, 1980, Grant filed a motion to dismiss or compel discovery. After a hearing on November 4, the trial court gave the limited partners twenty days to answer the interrogatories and stated, "If they have not been answered by that time, the Court will grant defense motion to dismiss." The trial court also imposed terms of $250 because of Englewood's tardiness.

Answers to the interrogatories were served on Grant's counsel on November 24, 1980. Grant believed that the answers relating to damage questions were unresponsive because they did not state the amount of damages, nor did they describe how or by whom they were computed. The trial court ultimately found these answers to be unresponsive.

It appears that, over the next fifteen months, Grant's counsel informally requested supplemental answers to the damage questions on numerous occasions, but to no avail.[2] Finally, on February 12, 1982, Grant filed a second motion to compel discovery or dismiss. The trial court held a hearing on March 8, 1982, on this motion, at which Englewood's counsel agreed to provide supplemental answers by March 31. Again, Grant contended that the answers received were unresponsive and inadequate.

Grant also encountered considerable difficulty in trying to depose Englewood's sole general partner, Earl Charlton. After several failed attempts to depose Charlton by agreement, Grant then noticed the deposition for April 22, 1982, and requested that certain documents be produced at that time. Charlton, through his counsel, cancelled the deposition but agreed to be deposed on May 17,

---

[2] This statement comes from Grant's motion for an order compelling discovery, dated February 10, 1982. It was relied upon by Grant in its brief-in-chief and was unchallenged by Englewood in its reply brief.

1982. On May 16, Charlton again cancelled. Attempts to reschedule made by Grant's counsel on May 17 were unavailing. Charlton was never deposed.

Similar problems were encountered by Grant in attempting to depose three of the limited partners. Their depositions were noticed for May 7, 1982. On May 6, 1982, through their counsel, they cancelled the depositions and rescheduled them for May 21. At 4 p.m. on the day before, counsel for Grant called counsel for Englewood to confirm the depositions and were told they had been cancelled. Grant's counsel tried unsuccessfully to speak with Englewood's counsel at that time.

On March 18–19, 1982, pursuant to an agreement between the parties, Grant reviewed various of Englewood's documents. At that time, counsel for Englewood removed documents, claiming them to be privileged. Although counsel for Englewood agreed to identify, copy and mail these documents, only two were identified and none were delivered.

In a motion filed June 1, 1982, Grant again moved the trial court for an order dismissing Englewood's complaint. After hearings, the trial court granted the motion and dismissed the complaint with prejudice.

In its findings of fact and conclusions of law, the trial court determined the following:

1. Englewood failed to provide responsive answers to interrogatories despite assurances of counsel and a court order compelling them to;

2. Englewood engaged in dilatory conduct in the prosecution of this lawsuit; and,

3. There was no justification for Englewood's partners' failure to appear and produce documents at depositions.

Further, in its memorandum decision, the trial court opined that Englewood had been delinquent in supplying requested documents, that it generally had not complied

with the statutes and court orders relating to discovery, that the repeated failure by Englewood to supply adequate answers called for dismissal, and that Englewood created a "pattern of abuse" and took a "cavalier approach" to court orders. Englewood appeals from the order of dismissal.

Englewood cites the standard for dismissal under the Federal Rules of Civil Procedure set forth in *Societe Internationale Pour Participations Industrielles v. Rogers,* 357 U.S. 197, 212 (1958) : "[W]e think that Rule 37 should not be construed to authorize dismissal of this complaint because of petitioner's noncompliance with a pretrial production order when it has been established that failure to comply has been due to inability, and not to willfulness, bad faith, or any fault of petitioner." [Footnote omitted.] This standard is consonant with the Wisconsin standard set forth in *Furrenes v. Ford Motor Co.,* 79 Wis. 2d 260, 267, 255 N.W.2d 511, 515 (1977) :

If matters of expediting court proceedings and assuring proper and prompt administration of justice are to be more than mere matters on the agenda at judicial or bar association workshops, the lead of the nation's high court is to be followed in upholding dismissals on the merits where, as the trial court found in the *National Hockey League Case,* and we see in the case before us, there has been a "callous disregard of responsibilities" owed by plaintiff and plaintiff's counsel to the court and to the adversary parties. [*Citing National Hockey League v. Metropolitan Hockey Club, Inc.,* 427 U.S. 639, *reh. denied,* 429 U.S. 874 (1976).]

As the *National Hockey League* case makes clear, the *Rogers* standard continues to retain its vitality : "While there have been amendments to the Rule since the decision in Rogers, neither the parties, the District Court, nor the Court of Appeals suggested that the changes would affect the teachings of the quoted language from that decision." 427 U.S. at 640.

Under any of the formulations, however, we are persuaded that the trial court's findings and conclusions here support the dismissal. The trial court found that Englewood engaged in dilatory conduct in the prosecution of the lawsuit and that the "[p]laintiffs failed to provide responsive answers to the interrogatories despite the assurances of counsel and the Court's order compelling the plaintiffs to do so." We deem it important that, when the trial court ordered Englewood to answer the interrogatories, it stated that the alternative to compliance was dismissal. These findings are supported by the evidence of record and are not clearly erroneous; therefore, they will not be reversed. *See* sec. 805.17(2), Stats., *Noll v. Dimiceli's, Inc.*, 115 Wis. 2d 641, 643–44, 340 N.W.2d 575, 577 (Ct. App. 1983). The trial court additionally determined that there was no justification for the failure to appear and produce documents. In light of these determinations,[3] we cannot therefore concur

[3] We note that we have previously characterized *Furrenes v. Ford Motor Co.*, 79 Wis. 2d 260, 268, 255 N.W.2d 511, 515 (1977), as requiring a finding of bad faith when there has been a dismissal for a violation of discovery orders. *State v. Beloit Concrete Stone Co.*, 103 Wis. 2d 506, 514, 309 N.W.2d 28, 32 (1981). There, we also reiterated that we are precluded from making findings of fact. *Id.* In the case before us, the trial court made no finding or other determination using the particular incantation, "bad faith." We do not believe, however, that the trial court's failure to utter those precise "magic words" results in any reversible infirmity. There can be no question but that the trial court was convinced of Englewood's bad faith; Englewood's conduct was characterized by the trial court as a "pattern of abuse," "dilatory" and as reflective of a "cavalier approach." Moreover, the trial court's implicit bad faith finding was so obvious that Englewood begins its appellate argument by stating that the trial court "ruled that Englewood postponed depositions in bad faith." Given this, a remand directing the trial court to make an explicit finding where it has already made unmistakable but implicit findings to the same effect would be both superfluous and a waste of judicial resources.

with Englewood that it "at all times acted in good faith and without willfulness or fault." We determine there to be no abuse of trial court discretion.

While it is true that dismissal for noncompliance with pretrial orders is appropriate only in cases of egregious conduct by a claimant, *Trispel v. Haefer,* 89 Wis. 2d 725, 732, 279 N.W.2d 242, 245 (1979), the party attempting to show that such a dismissal is an abuse of discretion must demonstrate "a clear and justifiable excuse" for the delay in prosecuting the case or for the failure to comply with procedure statutes under sec. 805.03, Stats. *Id.* at 733, 279 N.W.2d at 245. Englewood's "excuses" for its conduct have failed to persuade both the trial court and this court.

Englewood further argues that, even if, *arguendo,* it willfully failed to comply with discovery, "less extreme sanctions were available to achieve compliance." While we acknowledge that dismissal is an extreme sanction, it is still a sanction within the exercise of a trial court's discretion. *See* sec. 804.12(2) & (4), Stats.; *cf. Furrenes, supra.* We further note that the United States Supreme Court has found dismissal on the merits to be available in the appropriate case "not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent." *National Hockey, supra* at 643; *cited with approval in Furrenes, supra* at 267, 255 N.W.2d at 515.

Accordingly, we determine there to be no abuse of discretion in the trial court's dismissal of Englewood's complaint on the merits.

*By the Court.*—Order affirmed.